UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILICON GENESIS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>EV GROUP E.THALLNER GMBH,<br><br>Defendant. | Case No. 22-cv-04986-JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR CONTEMPT SANCTIONS**<br><br>Re: Dkt. No. 113 |

Plaintiff (SiGen) sues Defendant (EVG) for failing to pay royalties owed under a patent licensing agreement. (Dkt. No. 44.)[1] Before the Court is SiGen's motion for monetary contempt sanctions for EVG's alleged violation of the Protective Order. (Dkt. No. 113.) Having carefully considered the briefing, and with the benefit of oral argument on October 17, 2023, the Court GRANTS Plaintiff's motion for monetary contempt sanctions. Defendant violated the Protective Order by using confidential information SiGen produced in this action to file an Austrian lawsuit against SiGen.

**BACKGROUND**

On June 7, 2023, EVG filed a complaint against SiGen in the Commercial Court of Vienna. (Dkt. No. 113-2.) In the Austrian complaint, EVG alleges SiGen violated the parties' 2016 Non-Disclosure Agreement by sharing EVG's confidential documents with third parties, including KPMG and Sensiba San Filippo, LLP (Sensiba), "to unduly obtain advantages in the license fee audit under the [patent licensing agreement]." (*Id*. ¶ 16.) EVG also accuses SiGen of explicitly marking EVG's confidential documents as "public." (*Id*. ¶ 17.) EVG claims to have

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1  "found out" SiGen disclosed EVG's confidential information to third parties "[i]n the course of
2  the discovery proceedings in the U.S. Lawsuit." (*Id*. ¶¶ 12, 16.) The lawsuit identifies only one
3  document as having been improperly shared: "a detailed description of the central technology and
4  technical product and process details for equipment developed by EVG for a Fusion Bonding
5  System by the name of 'Gemini®FB' from May 2017 entitled 'Gemini®FB – Automated
6  Production Fusion Bonding System.'" (*Id*. ¶ 15.)

7  In this action, SiGen produced the Gemini®FB Technology Description EVG's Austrian
8  complaint alleges SiGen improperly shared as one of several attachments to a cover email SiGen's
9  president and CEO, Ted Fong, sent to KPMG. (Dkt. No. 94-3 at 2, 27-46.) SiGen designated and
10 produced the email correspondence and attachments as "CONFIDENTIAL" under the Protective
11 Order. (*Id*.; *see* Dkt. Nos. 57, 107.) Likewise, SiGen designated as "CONFIDENTIAL" and
12 produced to EVG an email from Ted Fong to Sensiba with the Gemini®FB Technology
13 Description attached. (Dkt. No. 113-2 ¶ 5.)

14 The relevant Protective Order commands:

> A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party *in connection with this case only for prosecuting, defending, or attempting to settle this litigation*. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order.

18 (Dkt. No. 57 § 7.1 (emphasis added).) The Protective Order further states, within 60 days of this
19 action's final disposition,

> each Receiving Party must return all Protected Material to the Producing Party or destroy such material. . . .Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material.

26 (*Id*. § 13.)

27 **PROCEDURAL HISTORY**

28 On September 20, 2023, SiGen filed an application for a temporary restraining order and

order to show cause why (1) EVG should not be held in contempt of court for violating the Protective Order and (2) a preliminary anti-suit injunction should not issue to enjoin EVG's Austrian suit. (Dkt. No. 113.) The Court converted SiGen's application for a temporary restraining order to a motion for a preliminary injunction and set it for in-person hearing on October 17. (Dkt. No. 117.) The parties subsequently jointly filed a letter notifying the Court EVG dismissed the Austrian action against SiGen without prejudice. (Dkt. No. 119.) The Court then vacated the preliminary injunction hearing as moot, but still held a hearing on SiGen's motion for contempt sanctions on October 17. (Dkt. No. 120.)

## DISCUSSION

### I.     Civil Contempt

A party's violation of a specific and definite court order constitutes civil contempt. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). SiGen, as the party moving for civil contempt sanctions, bears the burden of proving EVG's violation of the Protective Order by clear and convincing evidence. *Id.* The Court may not hold EVG in contempt if the challenged conduct appears to be based on a good faith and reasonable interpretation of the Protective Order. *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982). Substantial compliance with the Protective Order is a defense to civil contempt where every reasonable effort has been made to comply. *Dual-Deck*, 10 F.3d at 695.

SiGen has met its burden. The plain language of the Protective Order precludes the use outside this litigation of confidential material produced in this litigation. (Dkt. No. 57 § 7.1.) So, the Protective Order unambiguously forbids EVG from using SiGen's confidential material produced in this litigation to launch a foreign action. Yet, that is precisely what EVG did. In its Austrian complaint, EVG alleges:

> **In the course of the discovery proceedings in the U.S. Lawsuit, EVG found out that S[i]Gen had**, in clear violation of the contractual agreements of the NDA, **disclosed to third parties strictly confidential documents and information of EVG** that EVG had delivered to SiGen in the course of the discussions on the evaluation of [] another potential business relationship, **including, without limitation, the highly sensitive and strictly confidential Gemini®FB Technology Description**, although this had been expressly marked as confidential.

3

(Dkt. No. 113-2 ¶ 16 (emphasis added).)  This admission alone establishes by clear and convincing evidence EVG used confidential information SiGen produced in this action to initiate a foreign lawsuit against SiGen—conduct squarely prohibited by the Protective Order.  EVG "found out" about SiGen's alleged disclosure of EVG's information "[i]n the course of the discovery proceedings in the U.S. Lawsuit."  *Id*.  EVG could not have known of SiGen's disclosure of the Gemini®FB Technology Description to KPMG and Sensiba but for SiGen's confidential production of Ted Fong's emails.

EVG does not deny using SiGen's confidential material as the basis for its Austrian lawsuit.  Instead, it urges it complied with the Protective Order because "[t]he Austrian complaint does not attach any discovery material marked 'Confidential' or bates stamped by either party from this action."  (Dkt. No. 115 at 7.)  But this argument misses the point.  EVG used SiGen's confidential information to file the Austrian lawsuit.  The lawsuit itself admits to such use.  And, EVG identifies no other basis for its lawsuit other than SiGen's confidential information—the Ted Fong emails—produced in this lawsuit.  Clear and convincing evidence proves EVG's violation of the Protective Order.  *See On Command Video Corp. v. LodgeNet Ent. Corp.*, 976 F. Supp. 917, 922 (N.D. Cal. 1997) ("[Defendant's] *use* of protected information to file a *separate* [] lawsuit—as opposed to this litigation—is tantamount to no compliance at all." (cleaned up)).

Next, because the Protective Order prohibits disclosure of confidential information produced in this litigation to anyone outside "the categories of persons and under the conditions described in this Order," (Dkt. No. 57 §§ 7.1, 7.2), EVG swears it did not share SiGen's confidential information with its Austrian counsel.  (Dkt. No. 115-2 ¶ 5.)  Even if true, it does not alter EVG's undisputed use of SiGen's confidential information to file the Austrian lawsuit.

EVG's reliance on *Dual-Deck* for the proposition it substantially complied with the Protective Order is unpersuasive.  (Dkt. No. 115 at 6-8.)  The protective order in *Dual-Deck* prohibited the plaintiff from using *any* discovery produced in the action outside of the litigation.  *Dual-Deck*, 10 F.3d at 694.  During discovery the plaintiff obtained information it claimed would show other antitrust violations in addition to those already alleged.  After the court denied the plaintiff leave to amend the complaint to include the new claims, the plaintiff initiated a second

1  lawsuit against the defendant alleging the new claims.  *Id.*  The district court found the plaintiff in
2  contempt and the Ninth Circuit reversed.  EVG claims *Dual-Deck* requires this Court to find
3  EVG's admitted violation of the Protective Order was merely technical and not sanctionable.

4        But the protective order at issue in *Dual-Deck* was "written by defendants' lawyers, not the
5  judge, to throw the biggest possible blanket over every kind of knowledge which might be
6  obtained in the lawsuit," and, "if taken literally, the order would be absurd," since it would require
7  plaintiff's lawyers "to change fields, and never do antitrust work again, lest they 'use' what they
8  learned in a prior case 'in any way whatsoever' in any 'other action.'"  10 F.3d at 695.  The court
9  found the defendant "failed to prove by clear and convincing evidence that under a good faith,
10  reasonable interpretation of the protective order, [the plaintiff] did not substantially comply with
11  the order."  *Id.*  And, only one of the three alleged violations involved use of information marked
12  "confidential."  *Id.* at 694.

13        Here, in contrast, the governing Protective Order is the Northern District of California
14  Model Protective Order used in hundreds of cases in this District every year.  EVG identifies
15  nothing in the Order's language suggesting EVG could use confidential emails produced in this
16  action to sue SiGen in another action.  Moreover, the unrebutted evidence EVG told SiGen it sued
17  SiGen in Austria because it was willing to escalate the parties' dispute "on principle," (Dkt. No.
18  113-3 at ¶ 2), shows EVG's improper purpose in its misuse of the confidential material produced
19  in this litigation.  There is nothing "technical" about EVG's violation.  It was not done in good
20  faith.  And it was a blatant violation of the Protective Order.

21        \* \* \*

22        EVG violated, rather than substantially complied with, the Protective Order.  Because the
23  Protective Order's plain language protects confidential information produced in this action "from
24  use for any purpose other than prosecuting this litigation," (Dkt. No. 57 § 1), there exists no good
25  faith and reasonable interpretation of the Protective Order permitting EVG's use of SiGen's
26  confidential information to instigate a foreign action.  The Court holds EVG in contempt for
27  violation of the Protective Order.
28  //

**II.     Remedies**

Damages must be limited to SiGen's actual loss from injuries resulting from EVG's noncompliance with the Protective Order. *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1366–67 (9th Cir. 1987). SiGen seeks monetary sanctions consisting of attorneys' fees and costs for representation in the Austrian litigation and prosecution of SiGen's application for a temporary restraining order and preliminary injunction in this Court to enjoin the Austrian litigation. (Dkt. No. 113-2 ¶¶ 9-10.) On or before November 1, 2023, SiGen may file a declaration supporting its request for attorneys' fees and costs. EVG may respond on or before November 15, 2023. The Court will take the issue of the amount of fees and costs to be imposed as a sanction for civil contempt under submission at that time.

Although the Protective Order prohibits EVG from using the confidential Fong emails in a foreign action, to make it abundantly clear, the Court specifically prohibits EVG from using the email correspondence between Ted Fong and KPMG, the email correspondence between Ted Fong and Sensiba, and any accompanying attachments produced by SiGen to launch any other litigation against SiGen. (Dkt. No. 107 §§ 7.1, 13.) This includes the "CONFIDENTIAL" documents bearing the Bates labels SIGEN 2504-2613 and SIGEN 3846-98. (Dkt. No. 113-2 ¶¶ 4-5.) This prohibition survives the termination of this lawsuit. In other words, when this litigation is over, EVG cannot reinitiate its Austrian lawsuit based on what it learned from these emails, unless this Court orders otherwise.

Further, SIGEN 2504-2613, SIGEN 3846-98, and any and all copies of those documents are now DESIGNATED Attorneys' Eyes Only under the Protective Order. EVG is further ORDERED to return SIGEN 2504-2613, SIGEN 3846-98, and any and all copies of those documents, in whatever form, including electronic form, to its counsel within 14 days of this Order. EVG's declarant, Dr. Werner Thallner, must sign and file a declaration within 14 days of this Order confirming 1) EVG has returned SIGEN 2504-2613, SIGEN 3846-98, and any and all copies to its counsel in this case and 2) EVG and any and all of its employees and agents do not possess any copies of these documents in any form.

**CONCLUSION**

Accordingly, Plaintiff's motion for monetary contempt sanctions is GRANTED. On or before November 1, 2023, SiGen may file a declaration supporting its request for attorneys' fees and costs. EVG may respond on or before November 15, 2023. The Court will take the issue of the amount of fees and costs to be imposed as a sanction for civil contempt under submission at that time.

Further, EVG is prohibited from using the email correspondence between Ted Fong and KPMG, the email correspondence between Ted Fong and Sensiba, and any accompanying attachments produced by SiGen to launch any other litigation against SiGen or for any other purpose outside this litigation. (Dkt. No. 107 §§ 7.1, 13.) This includes the "CONFIDENTIAL" documents bearing the Bates labels SIGEN 2504-2613 and SIGEN 3846-98. (Dkt. No. 113-2 ¶¶ 4-5.) **This prohibition survives the termination of this lawsuit.** In other words, when this litigation is over, EVG cannot reinitiate its Austrian lawsuit based on what it learned from these emails, unless this Court first orders otherwise.

Further, SIGEN 2504-2613, SIGEN 3846-98, and any and all copies of those documents are now DESIGNATED Attorneys' Eyes Only under the Protective Order. EVG is further ORDERED to return SIGEN 2504-2613, SIGEN 3846-98, and any and all copies of those documents, in whatever form, including electronic form, to its counsel within 14 days of this Order. EVG's declarant, Dr. Werner Thallner, must sign and file a declaration within 14 days of this Order confirming 1) EVG has returned SIGEN 2504-2613, SIGEN 3846-98, and any and all copies to its counsel in this case and 2) EVG and any and all of its employees and agents do not possess any copies of these documents in any form.

This Order disposes of Docket No. 113.

**IT IS SO ORDERED.**

Dated: October 18, 2023

JACQUELINE SCOTT CORLEY
United States District Judge

7