MATTHEW G. BALL (SBN 208881)
matthew.ball@klgates.com
JASON N. HAYCOCK (SBN 278983)
jason.haycock@klgates.com
ANDREW J. WU (SBN 326268)
andrew.wu@klgates.com
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: (415) 882-8200
Facsimile: (415) 882-8220

*Attorneys for Defendant and Counterclaimant*
*EV Group E. Thallner GmbH*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Silicon Genesis, Corp.,<br><br>Plaintiff,<br><br>vs.<br><br>EV Group E. Thallner GmbH,<br><br>Defendant. | Case No: 3:22-cv-04986-JSC<br><br>**DEFENDANT EV GROUP E. THALLNER GMBH'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: March 7, 2024<br>Time: 10:00 a.m.<br>Crtrm: 8<br><br>Hon. Jacqueline Scott Corley<br><br>Trial Date: June 28, 2024 |

**NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

PLEASE TAKE NOTICE that on March 7, 2024 at 10:00 am in Courtroom 8, 19th Floor, of the United States District Court located at 450 Golden Gate Avenue, San Francisco, California, Defendant and Counter-Claimant EV Group E. Thallner GmbH ("EVG") will and hereby does move, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, for partial summary judgment in its favor on Plaintiff and Counter-Defendant Silicon Genesis Corp.'s ("SiGen") claim that EVG misclassified eleven specific transactions under the parties' patent licensing agreement as non-royalty bearing.

EVG brings this Motion on the grounds that SiGen has failed to identify any evidence that EVG misclassified the eleven specific transactions, and SiGen cannot identify a single provision in the parties' patent licensing agreement that EVG purportedly breached in classifying the eleven transactions as non-royalty bearing. Thus, EVG is entitled to partial summary judgment as a matter of law.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declarations of Paul Lindner and Matthew G. Ball and exhibits thereto, all pleadings, papers, and records in this action, and any oral argument presented at the hearing on this Motion.

Dated: January 11, 2024                                  K&L GATES LLP

                                                         By: /s/ *Matthew G. Ball*
                                                             Matthew G. Ball
                                                             Jason N. Haycock
                                                             Andrew J. Wu
                                                             *Attorneys for Defendant and Counterclaimant*
                                                             *EV Group E. Thallner GmbH*

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I. INTRODUCTION

In this patent licensing dispute, SiGen's primary claim is that EVG owes royalties for twenty-nine transactions supposedly covered during the term of the parties' patent licensing agreement ("PLA").[1]

However SiGen has advanced additional claims, which are the subject of this motion, that EVG also owes royalties for eleven different transactions that were allegedly misclassified as *non-royalty bearing* "Tier 0" sales under the PLA. Under the PLA, EVG owed SiGen royalties on certain sales that fell within three royalty tiers with distinct royalty rates—Tier I, Tier II, and Tier III. However, the PLA specifically excluded certain sales from any royalty obligations (Tier 0) depending on the customer's intended use of the particular system, which was typically conveyed through customer order documents. The parties do not dispute that it was EVG's responsibility to classify the transactions and that a customer's intended use would determine what royalty tier, if any, would be assigned to the transactions. That is precisely how EVG classified these eleven transactions as non-royalty bearing, Tier 0.

Nonetheless, SiGen contends that these eleven transactions should have been classified as royalty-bearing transactions. But SiGen fails to present any evidence at all to support its claim. Indeed, the uncontested evidence establishes that EVG properly classified those transactions as non-royalty bearing, Tier 0.

Rather than identify evidence of misclassification, SiGen merely attempts to rewrite the PLA's terms to create obligations that simply do not exist. Specifically, SiGen contends that EVG should have contractually obligated its customers and/or monitored those customers' usages. But again, SiGen cannot identify a single provision in the PLA that imposes such obligations on EVG. Ultimately, SiGen cannot identify any provision of the PLA that EVG supposedly breached when it

---

[1] The primary dispute in this action is when a "sale" occurs, which bears directly on whether EVG owes any royalties to SiGen for the main twenty-nine disputed transactions in this case. EVG expects to prevail on that issue trial, as the case law, expert testimony, and even SiGen's own accounting practices support EVG's position on when a "sale" occurs. However, the present motion focuses only on the discrete issue pertaining to the eleven other transactions that SiGen contends were incorrectly classified by EVG as non-royalty bearing under the PLA.

classified the eleven at-issue sales, and cannot identify evidence of misclassification, which is fatal to its claim.

Because SiGen's claim as to the eleven non-royalty bearing transactions finds no support under the PLA, the uncontroverted evidence, or well-settled law, partial summary judgment is appropriate as to those eleven non-royalty bearing transactions.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     Royalty Tiers Under the PLA

On October 28, 2003, EVG and SiGen entered into the PLA at issue in this case. The PLA terminated on September 30, 2021, which corresponds with the September 30, 2021 expiration date of the patents licensed under the PLA. While there are various methods available for wafer bonding, the PLA and the licensed patents cover only a specific method that utilizes plasma activated bonding. The PLA licensed to EVG certain SiGen patents covering technology related to a plasma activated bonding tool, which EVG used in connection with certain of the systems it manufactured and sold to customers who make semiconductors.

Under the PLA, certain systems that EVG sold were subject to three royalty tiers (Tier I, II, III), each with distinct royalty rates. Lindner Decl., Ex. 1 (PLA) §§ 1.29, 4.1.2. However, Section 1.29.3 of the PLA specifically excluded from royalty certain systems sold as follows:

> Notwithstanding anything to the contrary in this Agreement, the SiGen PAB Royalty Market ***expressly excludes*** sales of Products that are sold and used for, ***or intended to be used for (a) bonding Group III-V or Group II-VI element compound semiconductor layers,*** or (b) the manufacture of MEMS applications for patterns wafers by an *ex-situ*, single frequency RF sourcing plasma activated bonding process.

*Id.* § 1.29.3 (emphasis added).

Groups III-V and II-VI refer to certain elements from the periodic table that are bonded together to make certain kinds of semiconductors (*e.g.*, Gallium Arsenide semiconductors). Lindner Decl., ¶ 8. In other words, if EVG manufactured and sold a particular system to a customer, and the customer intended to use that system for bonding wafers made from certain Group III-V or II-VI elements (*i.e.*, for non-royalty bearing processes), that system would be subject to a 0% royalty under the PLA. *Id.* ¶ 4 & Ex. 1 (PLA) § 1.29. When the parties entered into the PLA, SiGen

understood that EVG would sell certain systems to customers that could be used for bonding Group III-V or Group II-VI element compound semiconductor layers.  Ball Decl., Ex. 3 (Fong Dep.) at 55:20-24.

At the time the parties entered into the PLA, there is no dispute that both sides understood that it was EVG's responsibility to classify the sales, according to the tier system outlined in the PLA, based on a customer's intended use.  Lindner Decl., ¶¶ 5, 7; Ball Decl., Ex. 3 (Fong Dep.) at 56:13-17.  EVG was required to create royalty reports for SiGen, which identified the specific systems it sold and which royalty tier under the PLA, if any, applied to those systems.  Lindner Decl., ¶ 7 & Ex. 1 (PLA) § 5.1.  EVG denoted a "Tier 0" in the royalty reports for any system that a customer purchased and intended to use for bonding Group III-V or II-VI elements, which were not subject to any royalty bearing tier under Section 1.29.3 of the PLA.  Lindner Decl., ¶ 8.

Notably, the PLA did not outline a specific classification methodology or specific information to be used in classifying any transactions.  Lindner Decl. Ex. 1 (PLA) § 1.29.  For example, nothing in the PLA required EVG to contractually restrict its customers from ever using a system for any royalty-bearing process covered by the PLA.  Lindner Decl., Ex. 1 (PLA), § 1.29.3; Ball Decl., Ex. 3 (Fong Dep.) at 57:25-59:2.  Nor did the PLA require EVG to verify—even many years after a customer purchased a system for non-royalty bearing processes—that a customer would never use that system for any royalty-bearing process covered by the PLA.  *Id.*

Nevertheless, SiGen understood that EVG would classify the sales of certain systems, according to the PLA's royalty tier system, based on order information provided by the customers.  Ball Decl., Ex. 3 (Fong Dep.) at 51:12-21, 56:18-22.  As outlined below, EVG did exactly that.

B.  **EVG's Classification of the Eleven Sales as Tier 0, Non-Royalty Bearing**

The eleven sales that SiGen claims were misclassified are identified by the following SAP[2] numbers:  S180148, S150066, S190131, S200008, S190140, S200091, S200071, S200114, S200125, S200108, S200115.  *See* Dkt. No. 100 (Joint Letter Brief) at pp. 4-5; Ball Decl., ¶ 2 & Ex. 1 (SiGen's Request for Production of Documents, Request No. 25); Lindner Decl., ¶ 6.

---

[2] An SAP number is a unique number used in the SAP system to track a company's products and items.  Lindner Decl., ¶ 6.

EVG's Executive Technology Director, Paul Lindner, was responsible for classifying these eleven sales as non-royalty bearing under the PLA. Lindner Decl., ¶¶ 5, 7, 12-15. The PLA provides, and the parties agree, that a customer's intended use of a system it purchased from EVG would determine the royalty tier, if any, in which it would be classified. Lindner Decl., ¶¶ 9-10 & Ex. 1 (PLA) § 1.29.3; Ball Decl., Ex. 3 (Fong Dep.) at 51:12-21, 56:18-22. Customer order information provided Mr. Lindner with the requisite information to properly classify a particular tool as royalty bearing or non-royalty bearing. Lindner Decl. ¶ 10.

In particular, an order confirmation provided the scope of delivery and system configuration of a particular system sold to a customer, which supported Mr. Lindner's classification of the eleven disputed transactions as non-royalty bearing. Linder Decl. ¶¶ 9-15. Such information included the wafer size and the plasma activation module of a particular system, which indicated that the customer intended to use a system for bonding Group III-V or Group II-VI element compound semiconductor layers—precisely what Section 1.29.3 of the PLA excluded from royalty. *Id.* ¶¶ 10-15 & Exs. 2-12. Because an order confirmation identifies the specific system(s) actually delivered to a particular customer, it reflects the customer's intended use of a particular system, which is the basis for a Tier 0, non-royalty bearing classification. *Id.* ¶ 9.

Additionally, Mr. Lindner classified these eleven transactions based on his investigation into a particular transaction, knowledge of a particular customer's manufacturing process, and to the extent necessary, discussions with EVG's regional sales managers involved with a particular transaction. *Id.* As outlined in more detail in Mr. Lindner's declaration filed herewith, each of the order confirmations for the eleven transactions at issue support his classification of the corresponding transactions as non-royalty bearing under Section 1.29.3 of the PLA. *Id.*

Critically, SiGen has failed to present any evidence to rebut the foregoing or EVG's classifications.

### III.    LEGAL STANDARD

Partial summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material

fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Partial summary judgment for the defendant is appropriate where the plaintiff "has failed to make a sufficient showing on an essential element of her [claim] with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the defendant has made this showing, the burden shifts to the plaintiff to designate "specific facts showing there is a genuine issue for trial." *Id.* Where a "rational trier of fact could not find for the non-moving party based on the record as a whole, there is no 'genuine issue for trial.'" *Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 70 F. Supp. 3d 1105, 1118 (N.D. Cal. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). To survive summary judgment, "a plaintiff must set forth non-speculative *evidence of specific facts*, not sweeping conclusory allegations." *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (emphasis added); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

## IV. SIGEN'S CLAIM THAT EVG OWES ROYALTIES FOR THE ELEVEN NON-ROYALTY BEARING TRANSACTIONS FAILS AS A MATTER OF LAW

First, SiGen has failed to identify *any* evidence that these eleven transactions were in fact misclassified as Tier 0, non-royalty bearing transactions. SiGen's principal, Theodore Fong, was designated as SiGen's corporate witness on the topic of non-royalty bearing sales under the PLA.[3] Mr. Fong agreed that a customer's intended use of a particular system determined its tier classification, and he understood that EVG would use customer order information as the basis for classifying the systems it sold to customers. Ball Decl., Ex. 3 (Fong Dep.) at 51:12-21, 56:18-22. That is precisely what EVG did with the order confirmations for each corresponding transaction at issue. Lindner Decl., ¶¶ 12-15. Critically, when asked whether SiGen would have any reason to doubt a customer's intended use of a particular system based on customer order information, Mr. Fong testified: "I couldn't verify it, so I would not doubt it." Ball Decl., Ex. 3 (Fong Dep.) at 79:7-

---

[3] Ball Decl., ¶ 3 & Ex. 2 (EVG's Rule 30(b)(6) Notice of SiGen) at p. 4 (Topic 9: "SiGen's understanding of the classification of any EVG tool or product as being non-royalty bearing under the Agreement.").

13. Partial summary judgment should be granted on that basis alone. *See MasterObjects, Inc. v. eBay, Inc.*, No. 3:12-cv-680-JSC, 2013 WL 1365915, at *1 (N.D. Cal. Apr. 3, 2013) (Corley, J.) ("There can be 'no genuine issue as to any material fact' when the moving party shows 'a complete failure of proof concerning an essential element of the nonmoving party's case.'") (citing *Celotex*, 477 U.S. at 323).

      Second, SiGen cannot point to a single provision in the PLA that EVG purportedly breached to support its theory that EVG incorrectly classified the eleven sales as non-royalty bearing. Partial summary judgment should be granted because there exists no term or provision on which a reasonable jury could conclude that EVG breached any term in the PLA. *See Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1157 (N.D. Cal. 2007) (granting defendant's motion for summary judgment as to the plaintiff's breach of contract claim because there were "no evidentiary basis on which a reasonable jury could conclude that [d]efendants breached the alleged agreement."); *LivePerson, Inc. v. [24]7.ai, Inc.*, No. 17-cv-01268-JST, 2018 WL 5849025, at *16 (N.D. Cal. Nov. 7, 2018) ("[Defendant] is entitled to summary judgment on [plaintiff's] breach of contract claim" because "[plaintiff] fails to identify a breach covered by the [agreement's] unambiguous terms, let alone raise a triable issue of fact."). And because SiGen cannot establish any breach, it cannot show that it suffered any damages that were caused by a breach, which further supports granting partial summary judgment. *See Codding v. Pearson Educ., Inc.*, No. 18-cv-00817-LB, 2019 WL 5864579, at *13 (N.D. Cal. Nov. 8, 2019) (granting defendant's motion for summary judgment where there was "no competent evidence [that] [plaintiff] has been damaged, much less that [defendant] caused this damage" because there was no evidence of any breach of the agreement).

      To avoid this fact, SiGen instead attempts to read terms into the PLA that are entirely absent. Specifically, SiGen contends that the PLA imposed specific obligations on EVG to either (1) contractually restrict its customers' uses of the systems they purchased or (2) to otherwise monitor that they only used those systems for specific purposes, even long after the purchases were completed. However, SiGen's theories are undercut by Mr. Fong's own testimony. Mr. Fong acknowledged that, at the time the parties entered into the PLA, SiGen fully understood that a

customer might change its intended usage at some later date, and Mr. Fong admitted that this would not convert a non-royalty bearing transaction into a royalty bearing one. Ball Decl., Ex. 3 (Fong Dep.) at 56:6-12, 80:1-17. Moreover, Mr. Fong recognized that SiGen could have negotiated for terms in the PLA requiring EVG to contractually bind its customers to specific uses of systems, but ultimately did not do so for the PLA. *Id.* (Fong Dep.) at 57:3-59:2, 88:21-89:7. SiGen cannot rewrite the terms of the PLA. *See Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007) ("[I]t is a familiar principle of contract law that unless a contract is voidable, we must enforce it as drafted by the parties[.]") (internal quotation and citation omitted); *Hints v. Am. Family Life Assurance Co.*, No. 4:19-cv-03764-YGR, 2020 WL 2512234, at *3 (N.D. Cal. May 15, 2020) ("A court cannot rewrite [a] contract – a court must enforce the explicit language of the contract.").

Put simply, the undisputed evidence demonstrates that EVG properly classified the eleven transactions, and nothing in the PLA required EVG to do anything more than it did. SiGen cannot establish that the eleven transactions were in fact misclassified, nor can it identify any term or provision in the PLA that EVG purportedly breached in classifying the eleven transactions as Tier 0, non-royalty bearing. Partial summary judgment as to the eleven non-royalty bearing transactions is appropriate.

## V.  CONCLUSION

For the aforementioned reasons, EVG's motion for partial summary judgment should be granted.

Dated: January 11, 2024                         K&L GATES LLP


                                                By: /s/ *Matthew G. Ball*
                                                Matthew G. Ball
                                                Jason N. Haycock
                                                Andrew J. Wu
                                                *Attorneys for Defendant and Counterclaimant*
                                                *EV Group E. Thallner GmbH*