1  MATTHEW G. BALL (SBN 208881)
   matthew.ball@klgates.com
2  JASON N. HAYCOCK (SBN 278983)
   jason.haycock@klgates.com
3  ANDREW J. WU (SBN 326268)
   andrew.wu@klgates.com
4  **K&L GATES LLP**
   Four Embarcadero Center, Suite 1200
5  San Francisco, CA 94111
   Telephone: (415) 882-8200
6  Facsimile: (415) 882-8220

7
   *Attorneys for Defendant and Counterclaimant*
8  *EV Group E. Thallner GmbH*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Silicon Genesis, Corp., | Case No: 3:22-cv-04986-JSC |
| Plaintiff, | **DEFENDANT EV GROUP E. THALLNER GMBH'S LOCAL RULE 79-5(f) STATEMENT RE: MAINTAINING SEAL OF ITS CONFIDENTIAL INFORMATION** |
| vs. | |
| EV Group E. Thallner GmbH, | Hon. Jacqueline Scott Corley |
| Defendant. | Trial Date: June 28, 2024 |

On February 1, 2024, Plaintiff Silicon Genesis Corp. ("SiGen") filed its Administrative Motion to Consider Whether EVG's Materials Should Be Sealed (Dkt. No. 135) in connection with SiGen's Opposition to EVG's Motion for Partial Summary Judgment ("SiGen's Opposition"). Pursuant to Civil Local Rule 79-5(f), Defendant and Counterclaimant EV Group E. Thallner GmbH ("EVG") hereby responds to Dkt. No. 135 and submits this statement to maintain the seal over EVG's highly confidential materials.

## I. LEGAL STANDARD

The Ninth Circuit has recognized that the "compelling reasons" standard applies when evaluating motions to seal filed in connection with motions that are more than "tangentially related to the merits of the case." *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1098, 1101 (9th Cir. 2016) (distinguishing between discovery motions that were unlikely to be related to the merits, with motions for summary judgment that "obviously" were). Because SiGen's opposition to EVG's motion for partial summary judgment is related to the merits of the case and affects the substantive rights of the litigants, the "compelling reasons" standard applies. *See id.* at 1098 ("compelling reasons" standard applies to "documents attached to a motion for summary judgment" because "summary judgment adjudicates substantive rights.") (internal quotations and citation omitted).

A compelling reason to seal information exists when "court files might [] become a vehicle for improper purposes, such as the use of records to . . . release trade secrets." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569-70 (9th Cir. 2008) (internal quotations and citation omitted). Examples of a compelling reason to seal include when a court file may be used "as sources of business information that might harm a litigant's competitive standing." *Ctr. for Auto Safety*, 809 F.3d at 1097 (citing *Nixon v. Warner Comm'n, Inc.*, 435 U.S. 589, 598-99 (1978)). For purposes of sealing, courts construe a "trade secret" to include "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569-70.

## II. INFORMATION THAT EVG REQUESTS TO HAVE SEALED

### A. Compelling Reasons Exist to Seal the Confidential, Proprietary, and Competitive Information Disclosed in SiGen's Opposition Brief

As detailed in Paul Lindner's declaration filed herewith, certain portions of SiGen's Opposition should be sealed because it (1) contains excerpts of the order confirmations for the eleven disputed systems that form the basis of EVG's Motion for Partial Summary Judgment and Administrative Motion to Seal; and (2) contains a dollar amount that pertains to the royalty rates and patent licensing terms provided in the parties' Patent License Agreement (PLA) at issue in this case.

*First*, the imaged excerpts of the order confirmations contained in SiGen's Opposition brief should remain sealed. Such excerpts were taken from the same order confirmations that form the basis of EVG's Motion for Partial Summary Judgment and Administrative Motion to Seal, the latter of which requested the Court to seal the entirety of each order confirmation for the eleven disputed transactions.

An order confirmation is a document that EVG maintains in the normal course of business. Each order confirmation contains highly sensitive commercial information pertaining to EVG's proprietary technology and the systems it sells to its customers. Each order confirmation was marked as "Confidential" in this litigation, and EVG marked the order confirmations as "Confidential" or "Confidential: EVG Internal" in the underlying documents themselves prior to this case. Lindner Decl. ¶ 3.

The information in the order confirmations constitute EVG's confidential, proprietary, and commercially sensitive information that is not made available to the public. Each of the order confirmations contain confidential, proprietary, and commercially sensitive information regarding various product specifications, module specifications, and system configurations of EVG's proprietary technology, which EVG goes to great lengths to protect from disclosure to the public. EVG maintains information about its wafer bonding systems and other proprietary technology and processes, financial information, and customer related information as trade secrets and goes to substantial lengths to maintain the secrecy of that information. None of the information described in the order confirmations is disclosed without EVG's express approval. Lindner Decl. ¶ 3. Courts

have found compelling reasons to seal similar information. *See, e.g.*, *Prescott v. Reckitt Benckiser LLC*, 2022 WL 847309, at *4 (N.D. Cal. Mar. 22, 2022) ("internal business strategies, competitive analyses, trade secrets, product development plans, and financial information" are "an appropriate subject for sealing"); *Opperman v. Path, Inc.*, No. 13-cv-0453, 2017 WL 1036652, at *3 (N.D. Cal. Mar. 17, 2017) (finding compelling reasons to seal "confidential information about Twitter's products, proposed features, design concepts . . . that constitute trade secrets").

Disclosing this sensitive commercial information without EVG's consent would cause significant harm to EVG and its reputation because it contains confidential information regarding EVG's proprietary technology, the detailed product specifications underlying EVG's proprietary technology, certain pricing and payment terms, and other confidential information regarding EVG's proprietary technology and processes that could provide competitors in the market with insight into EVG's business and technology operations and strategies if disclosed to the public. Accordingly, compelling reasons exist to seal the excerpted images of the order confirmations contained in SiGen's Opposition, as described in the Lindner Declaration filed herewith. *See, e.g.*, *Adtrader, Inc. v. Google LLC*, 2020 WL 6395528, at *2 (N.D. Cal. Feb. 11, 2020) (sealing documents that "could cause competitive harm by providing insight into Google's strategic and financial decisions, and by revealing to competitors the capabilities of Google's systems"). Therefore, EVG respectfully requests that imaged excerpts of the order confirmations disclosed in SiGen's Opposition, as further detailed in Mr. Lindner's declaration, should remain sealed.

*Second*, the dollar amount disclosed on page 6, line 20 of SiGen's Opposition should also remain sealed. To the extent this dollar amount reflects SiGen's calculation of a royalty purportedly owed for a system sold to an EVG customer, this information directly relates to the royalty rates and patent licensing terms provided in the parties' Patent License Agreement (PLA) at issue in this case, which comprises highly sensitive financial and competitive information that EVG protects from disclosure to the public. Lindner Decl. ¶ 3.

Disclosure of this information could allow others to calculate the royalty percentages associated with a particular sale, which would harm EVG's ability to competitively negotiate royalty rates, royalty terms, and payment terms in future licensing agreements. If such information were

4

disclosed to the public, it would significantly harm EVG's competitive standing in the industry, specifically regarding pricing and royalty rates associated with particular systems sold to customers. Lindner Decl. ¶ 3. *See DiscoverOrg Data LLC v. Bitnine Global, Inc.*, 2020 WL 8669859, at *3 (N.D. Cal. Nov. 6, 2020) (compelling reasons existed to seal confidential information where the disclosure would harm the party's competitive standing); *Philips v. Ford Motor Co.*, 2016 WL 7374214, at *6 (N.D. Cal. Dec. 20, 2016) (the "need to avoid competitive disadvantage in contract negotiations and undercutting by competitors is a compelling reason that justifies sealing.").

Thus, there are compelling reasons to seal this type of information. *See Bunsow De Mory LLP v. North Forty Consulting LLC*, No. 20-cv-04997-JSC, 2020 WL 7872197, at *1 (N.D. Cal. Aug. 7, 2020) (Corley, J.) ("Confidential business information in the form of 'license agreements, financial terms, details of confidential licensing negotiations, and business strategies' satisfies the 'compelling reasons' standard.") (citation omitted); *Rodman v. Safeway Inc.*, 2014 WL 12787874, at *2 (N.D. Cal. Aug. 22, 2014) (sealing "internal, nonpublic information discussing [the defendant's] pricing strategy, business decisionmaking [sic], and financial records, which would expose [the defendant] to competitive harm if disclosed").

**B. Compelling Reasons Exist to Seal the Highly Confidential Purchase Orders Filed as Exhibit A to the Poe Declaration in Support of SiGen's Opposition**

The purchase orders contained within Exhibit A to the Poe declaration were produced in this case as "Highly Confidential – Attorneys' Eyes Only" pursuant to the Protective Order (Dkt. No. 107) that this Court granted (Dkt. No. 109). Each purchase order reveals the specific customer identity, customer address, customer billing information, and other customer identifying information that constitutes highly confidential and trade secret information of EVG. Additionally, each purchase order reveals the purchase price, payment terms, and other sensitive financial information for a particular EVG system that a specific customer purchased from EVG, which is highly confidential commercial information that EVG goes to great lengths to protect from disclosure to the public. This information constitutes highly confidential trade secret information of EVG, including the customer identifying information and details of the particular transaction with that customer. EVG maintains information about its wafer bonding systems, sales data, and customers, including their identities, as

trade secrets and goes to substantial lengths to maintain the secrecy of that information. *See, e.g.*, *Opperman*, 2017 WL 1036652, at *4 ("the privacy interests of non-parties provide[s a] compelling reason[n] to seal").

There are only a certain number of companies in the world who are potential customers for EVG's sophisticated products. EVG has been developing its customer base and keeping their identities secret since well before the 2003 PLA. To protect customer information, EVG and its customers enter into NDAs requiring every individual involved to sign personally. These NDAs require strict secrecy. EVG keeps the customer name secret by, among other things, allowing only very limited personnel, only after they have signed the NDA, to know the actual identities of its customers in any particular transaction. The rest of EVG's organization refers to customers by code names or transaction numbers only. Lindner Decl. ¶ 5.

EVG's customer relationships are also the trade secrets of EVG's customers and those customers keep that relationship secret. EVG's customers are often key parts of the supply chain of some of the most popular consumer products in the world. Those customers take steps to keep their identities secret even from each other, to avoid disclosing information that a competitor could use to its advantage. EVG has the obligation to notify customers in case their business relationship with EVG has to be disclosed. Disclosure to third parties is incredibly disruptive to both EVG's and its customer's business because it compromises the competitive value of the secrecy of the relationship. Forcing EVG to disclose highly sensitive customer identifying information would cause irreparable harm to EVG, its reputation, and EVG's customers' competitive standing. Lindner Decl. ¶ 5. *See True Health Chiropractic Inc. v. McKesson Corp.*, 2020 WL 8515133, at *2 (N.D. Cal. Dec. 24, 2020) (sealing customer identifying information that constituted "competitively sensitive information," which "the Ninth Circuit has held is sealable under the heightened 'compelling reasons' standard.") (citing *Kamakana*, 447 F.3d at 1179).

In sum, maintaining the secrecy of customer-related information and sensitive financial information associated with the sales to those particular customers in the purchase orders is vital to EVG's commercial success, and compelling reasons exist to seal this type of information. *See Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, 2016 WL 4091388, at *2 (N.D. Cal. Aug. 2,

2016) (sealing customer identifying information which qualified as trade secrets and the financial information associated with those customer transactions that could be used to disadvantage the moving party); *see also Rodman*, 2014 WL 12787874, at *2 (sealing "internal, nonpublic information discussing [the defendant's] pricing strategy, business decisionmaking [sic], and financial records, which would expose [the defendant] to competitive harm if disclosed").

### III. MATERIAL THAT EVG DOES NOT REQUEST TO HAVE SEALED

EVG does not seek to have sealed the remaining portions of SiGen's Opposition brief that were highlighted and filed under seal.

### IV. CONCLUSION

For the aforementioned reasons, EVG respectfully requests that the Court seal the specific portions of SiGen's Opposition and Exhibit A to the Poe Declaration, as further detailed in the Lindner Declaration filed herewith.

Dated: February 9, 2024

K&L GATES LLP

By: /s/ *Andrew J. Wu*
Matthew G. Ball
Jason N. Haycock
Andrew J. Wu
*Attorneys for Defendant and Counterclaimant*
*EV Group E. Thallner GmbH*